IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WALTER BURGESS,

    Plaintiff,

v.

INDUSTRIAL FABRICATORS, INC.,

    Defendant.

Case No. 2:19-cv-4579
Judge Edmund A. Sargus, Jr.
Chief Magistrate Judge Elizabeth P. Deavers

**OPINION AND ORDER**

This matter is before the Court on Defendant Industrial Fabricators, Inc.'s Motion for Summary Judgment. (ECF No. 12.) The parties have fully briefed the motion and it is ripe for decision. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.**

This case arises out of Plaintiff Walter Burgess's termination of employment with Defendant Industrial Fabricators, Inc. Industrial Fabricators is a manufacturer of metal fabrications located in Westerville, Ohio. (Landig Aff. ¶ 3.) Burgess began at-will employment with Industrial Fabricators on August 9, 2018 as a welder. (*Id.* ¶¶ 5–6.)

**A. Industrial Fabricators' Attendance Policy**

Industrial Fabricators uses a points-based attendance system described in the company policy handbook. (*Id.* ¶¶ 9, 13.) Burgess received a copy of the company policy handbook on his first day of employment. (Burgess Dep. 97:12–18; Landig Aff., Ex. B.) The policy awards points for tardiness, excused absences, and unexcused absences. (Burgess Dep., Ex. A.) Each employee is permitted to accrue up to 79 attendance points in a 12-month period. (*Id.*) The policy provides that "[a]ny employee who accumulates 80 points or more within any 12 consecutive month period

1

will be discharged." (*Id.*) For excused doctor's appointments, employees are awarded points based on the number of hours missed:

| Hours Absent | Points Awarded |
|---|---|
| 1 hour | 0 points |
| 2 hours | 1 point |
| 3 hours | 2 points |
| 4 hours | 3 points |
| 5 hours | 4 points |
| 6+ hours | 5 points |

(*Id.*) Any absence from work must be either "pre-arranged or called in within 30 minutes of the start of a shift." (*Id.*) If an employee misses work for consecutive days for the "same specific reason," the employee's multiple absences "may be considered a single occurrence" for purposes of the point scale. (*Id.*)

Any absence not pre-arranged or called in within 30 minutes of the start of a shift is considered an unexcused absence worth 15 attendance points. (*Id.*) To pre-arrange an absence, an employee "must call in every day he/she is unable to work." (Burgess Dep., Ex. A.) To call in an absence, employees were supposed to call Industrial Fabricators and speak to whomever answered the phone and ask for their supervisor. (*Id.* at 106:1–8, Ex. A.) If an employee's supervisor was not available, the policy directs the employee to ask for a supervisor in another department. (*Id.* at Ex. A.)

B. **Burgess's Attendance Record**

It is undisputed that Burgess was absent or tardy 25 times during his 10 months of employment. (Landig Aff. ¶ 16.) Most of these absences resulted in points. (*Id.*) The record contains two different attendance logs for Burgess. One is an internal, handwritten log kept in a

notebook. (Wells Dep. 38:1–5, Ex. F.) The other is an audit report of Burgess's attendance points prepared by the company owner, Fred Landig. (Landig Aff., Ex. E.) Landig testified in his deposition that the audit report represents the correct attendance points calculation and that the handwritten log contains a clerical error. (Landig Dep. 16:22–17:9.) This testimony is not disputed.

Burgess accumulated 70 attendance points by February of 2019. (Edwards Aff. ¶ 7.) On February 26, 2019, Burgess was issued a warning that he had accrued 70 points and that his next scheduled workday would be converted into a day off without pay. (*Id.* ¶ 8.) Burgess acknowledged that he was not keeping track of his attendance points. (Burgess Dep. 109:8–15.) He accrued another five points on May 6, 2019, bringing his total to 75 points. (Landig Aff., Ex. E.)

### C. Burgess's Alleged Disability and Termination

In the month leading up to Burgess's termination, Burgess began experiencing pain in his lower bowel area, tiredness, frequent restroom trips, and bloody stool. (Burgess Dep. 80:3–6.) Burgess has a history of gastrointestinal problems, including colorectal cancer in 2010. (*Id.* at 77:16–80:6; Ex. A to Pl.'s Resp., ECF No 16-2.) On June 7, 2019, Burgess missed three hours of work for a doctor's appointment for his gastrointestinal issues. (Burgess Dep. 182:1–11.) Burgess was issued two attendance points for the excused absence, bringing his total to 77 points. (Landig Aff., Ex E.) During the June 7 appoint, Burgess's doctor scheduled a colonoscopy for June 11, 2019. (Burgess Dep. 182:1–11.) Burgess pre-arranged absences for June 11 and 12 with his supervisor, Tom Wells. (*Id.* at 137:21–138:12.)

Burgess missed work on June 11 and 12, 2019 for the colonoscopy, during which doctors discovered a potentially malignant mass. (*Id.* at 82:1–17.) On the night of June 12, Burgess

checked himself into the emergency room experiencing sharp pains in his stomach. (*Id.* at 142:3–17.) He discharged himself from the hospital the next morning. (*Id.* at 142:24–143:2.) Burgess did not attend work on June 13. (*Id.* at 138:16–20.) Burgess did not pre-arrange the June 13 absence. (*Id.* at 137:21–138:20.) Burgess also did not call into Industrial Fabricators. (*Id.* at 138:21–139:17.) Instead, Burgess texted Tavis Hook, an employee who was not his supervisor, and asked Hook to tell Wells that Burgess would not be attending work. (*Id.*) Hook claims that he informed Wells that Burgess would not be coming in to work. (Hook Aff. ¶ 9.) Wells denies that Hook ever reported Burgess's absence to him. (Wells Dep. 21:1–2.)

When Burgess returned to work on June 14, 2019, Burgess provided Tom Wells with his doctor's notes for the June 11 and 12 absences. (*Id.* at 153:24–154:4.) Burgess told Wells, when handing him the doctors notes, that the doctors found a potentially malignant mass, and that Burgess may have to go in for more testing. (*Id.* at 160:17–24.) Wells examined the doctor's notes and compared the signatures to a note from Burgess's June 7, 2019 appointment with the same doctor. (Wells Aff. ¶ 33.) In Wells' opinion, the signatures on the notes of Dr. Michael Brogan were all different; Wells therefore believed that Burgess was being dishonest. (*Id.* at ¶ 34.) Wells turned the notes into James Edwards, the Accounting Manager in charge of tracking employee attendance. (Wells Dep. 15:19–22.) After Wells turned the notes over to Edwards, Edwards wrote an order to have Burgess terminated. (*Id.* at 15:19–16:1.)

The attendance audit reflects that Industrial Fabricators awarded Burgess 5 points for an excused absence on June 11, bringing his total to 82 points. (Landig Aff., Ex. E; Edwards Aff. ¶ 14; Wells Aff. ¶ 21.) The handwritten attendance log shows that Wells wrote "(fake)" next to the entry of the June 11 doctor's note and indicated the same for the June 12 absence. (Wells Dep., Ex F.) Tom Wells stated in his affidavit that Industrial Fabricators did not award points for

4

Burgess's June 12 absence, per the policy that consecutive absences for the same specific reason will not result in points. (Wells Aff. ¶ 22.) The attendance audit reflects that Burgess was not awarded points for June 12. (Landig Aff., Ex E.) But the handwritten log shows that Wells originally gave Burgess five points for the June 12 absence, and Wells stated during his deposition that he awarded points for June 12 because he believed the doctors notes were fake. (Wells Dep. 40:2–17, Ex. F.) Industrial Fabricators awarded Burgess 15 points for the unexcused absence on June 13, putting his total attendance points at 97 based on the attendance audit (Landig Aff., Ex E) and 95 points based on the handwritten log (Wells Dep., Ex. F).

After Edwards wrote Burgess's termination notice, Wells delivered the notice to Burgess at his workstation. (Wells Dep. 16:5–9.) The order informed Burgess that he was being terminated for exceeding 80 attendance points. (*Id.* at 11.) Upon delivering the notice of termination to Burgess, Wells told Burgess that the notes were "fake as shit" and "we're firing you." (Burgess Dep. 167:1–3; Wells Dep. 21:3–6.) It is undisputed that the doctor's notes were legitimate, and that Wells was mistaken. (Brogan Aff. ¶¶ 1–3; Wells Dep. 32:1–24.)

On October 16, 2019, Burgess initiated this lawsuit against Industrial Fabricators. Burgess claims that Industrial Fabricators terminated him in violation of the Americans with Disabilities Act and Ohio disability discrimination law. (Compl., ECF No. 1.) Industrial Fabricators now moves for summary judgment on each of those claims. (ECF No. 12.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has

5

the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III.

Industrial Fabricators moves for summary judgment on Burgess's state and federal disability discrimination claims. Ohio's disability discrimination law "parallels" the federal ADA "in all relevant respects[.]" *Lockhart v. Marietta City Sch.*, No. 2:19-CV-2935, 2020 WL 6782209, at *9 (S.D. Ohio Nov. 18, 2020) (citing *Belasco v. Warrensville Heights City Sch. Dist.*, 634 F.

6

App'x 507, 514 (6th Cir. 2015)). The Court therefore applies federal law to Burgess's parallel state claim, and the two claims "rise and fall together." *See id.*

The ADA prohibits a covered employer from discharging an employee because of the employee's disability. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 318 (6th Cir. 2019) (citing 42 U.S.C. §§ 12102(1), 12112(a)). To succeed on a claim for disability discrimination, the plaintiff must prove (1) that he has a disability; (2) that he is "qualified to perform the job requirements with or without reasonable accommodation," and (3) that he would not have been discharged but for the disability. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc)). Under the ADA, "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).

In this case, Industrial Fabricators moves for summary judgment on grounds that: (1) it did not "regard" Burgess as having a disability; and (2) Burgess has no evidence that Industrial Fabricators terminated him because of his disability. (*See generally* Def.'s Mot. Summ J., ECF No. 12, hereinafter "Def.'s Mot.") Industrial Fabricators claims that it terminated Burgess solely because he accumulated more than 80 attendance points within 12 consecutive months, which was grounds for termination under the company policy. (Wells Aff. ¶ 51.) Burgess responds that he has a "disability" under all three ways that term is defined under the ADA. He points to evidence that, at the time of termination, he had suffered from bloody stools, abdominal pain, and diarrhea, and that he has a documented history of gastrointestinal issues, including colorectal cancer. (Burgess Dep. 77:10–18, 79:13–80:6.) Burgess also argues that there are genuine disputes of fact

7

on whether he was terminated because of his disability. (Pl.'s Response to Def.'s Mot. Summ J. at 15–16, ECF No. 14, hereinafter "Pl's Resp.")

In proving a claim for disability discrimination, a plaintiff has two methods. First, the plaintiff may point to direct evidence that the employer "had a discriminatory motive in carrying out its employment decision." *Babb*, 942 F.3d at 319. Second, the employee may rely on "circumstantial evidence of discrimination under the well-trod *McDonnell Douglas* burden-shifting framework." *Id.* at 320 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The "direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 951 (M.D. Tenn. 2013) (citing *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004)). Burgess relies on both methods in opposing Industrial Fabricators' Motion for Summary Judgment, neither of which succeed in creating a genuine issue of fact for trial.

**A. Direct Evidence**

Burgess first attempts the direct evidence method. "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Lovell*, 969 F. Supp. 2d at 951 (citing *Rowan v. Lockheed Martin Energy Sys. Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). Direct evidence of disability discrimination "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* (citing *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 915 (6th Cir. 2013)). As the Sixth Circuit put it, "such evidence would take the form of, for example, an employer telling an employee, 'I fired you because you are disabled.'" *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998).

Burgess argues that his supervisor's statement that his doctor's notes were "fake as shit" is direct evidence of disability discrimination. (Pl.'s Resp. at 12.) This statement, however, does not prove the existence of a discriminatory motive without requiring any inferences. *See Lovell*, 969 F. Supp. 2d at 951. As Burgess argues, "it is abundantly clear that Mr. Wells believed the doctor's notes related to Mr. Burgess's visits to Ohio Gastro were fake and issued him attendance points that resulted in his termination." (Pl.'s Resp. at 12.) Thus, even under Burgess's theory, this statement evidences that his employer believed that he submitted fake doctor's notes, not that his employer fired him based on animus against Burgess because of his disability. In other words, "I fired you because you submitted fake doctor's notes" is not the same as "I fired you because you are disabled." *See Chrysler Corp.*, 155 F.3d at 805. Burgess has therefore failed to point to any direct evidence of discriminatory motive on part of Industrial Fabricators.

### B. *McDonnell Douglas* Burden-Shifting Framework

Because direct evidence of discriminatory animus is rare, employees most often rely on the *McDonnell Douglas* burden-shifting approach. *Id.* Under this framework, the plaintiff has the initial burden to establish a prima facie case of discrimination. *Lockhart*, 2020 WL 6782209, at *9 (citing *Belasco v. Warrensville Heights City Sch. Dist.*, 634 F. App'x 507, 517 (6th Cir. 2015)). After the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. *Id.* If the employer articulates a legitimate, nondiscriminatory reason for the termination, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's "proffered reasons were in fact a pretext designed to mask illegal discrimination." *Id.* (alterations omitted).

### 1. Prima Facie Case

To demonstrate a prima facie case, Burgess must demonstrate that (1) he had a disability the time of termination; (2) that he was otherwise qualified for the position, with or without reasonable accommodation; (3) that he suffered an adverse action; (4) that the employer knew or had reason to know of the disability; and (5) that he was replaced or the job remained open. *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012). A plaintiff's burden "in establishing a prima facie case is not onerous and is easily met." *Wallace v. Edward W. Sparrow Hosp. Ass'n*, 782 F. App'x 395, 404 (6th Cir. 2019).

The parties only dispute the first element, whether Burgess had a "disability." On this element, a plaintiff need only produce sufficient "evidence from which a jury could find" that the plaintiff had a disability at termination. *Lockhart*, 2020 WL 6782209, at *10 (citation omitted). "And the Court does not stringently test that evidence." *Id.* (citing *Barlia v. MWI Veterinary Supply, Inc.*, 721 F. App'x 439, 445 (6th Cir. 2018)). Indeed, the ADA contains several rules of construction, one of which being that "the question of whether an individual's impairment is a disability . . . should not demand extensive analysis." *Barlia*, 721 F. App'x at 445 (citing the ADA Amendments Act § 2(b)(5)).

Industrial Fabricators argues on this element only that Burgess cannot establish that he was "regarded as" having an actual disability. (Def.'s Mot. at 16.) But "being regarded as having" an actual disability is only one of the three different ways a plaintiff can prove they had a "disability" as that term is defined in the ADA. A plaintiff also has a "disability" if, at termination, the plaintiff had "a physical or mental impairment that substantially limits one or more major life activities" had "a record of such an impairment[.]" 42 U.S.C. § 12102(1). "Major life activities" include "performing manual tasks, walking, standing, concentrating, thinking, and working, as well as the

10

operation of major bodily functions, such as endocrine functions." *Barlia*, 721 F. App'x at 445 (citing 42 U.S.C. § 12101(2)).

Here, Burgess produced sufficient evidence from which a jury could conclude that he had a disability. Burgess has a history of gastrointestinal problems, including colorectal cancer. (Burgess Dep. 77:16–80:6; Ex. A to Pl.'s Mot, ECF No 16-2.) In the month leading up to Burgess's termination, Burgess began experiencing pain in his lower bowel area, tiredness, frequent restroom trips, and bloody stool. (Burgess Dep. 80:3–6.) Burgess missed work on June 11 and 12, 2019 for a doctor's appointment and a colonoscopy where doctors discovered a potentially malignant mass. (*Id.* at 82:1–17.) Burgess also stayed overnight in the emergency room on June 12 due to sharp pains in his stomach. (*Id.* at 142:17–143:2.). At the prima facie stage, this evidence is sufficient for a jury to conclude that Burgess suffered from a "physical" "impairment" that "substantially limit[ed] one or more major life activities" or that he had a "record of such an impairment[.]" 42 U.S.C. § 12102(1). Burgess has therefore established the first element of his prima facie case, and the rest of the elements are not disputed.

Because Industrial Fabricators only disputes this element of Burgess's prima facie case, the burden now shifts to Industrial Fabricators to offer a legitimate non-discriminatory reason for his termination. *See Lockhart*, 2020 WL 6782209, at *10 (citing *Moates v. Hamilton Cty.*, 976 F. Supp. 2d 984, 991 (E.D. Tenn. 2013)) (addressing only the disputed elements of a plaintiff's prima facie case).

### 2. Legitimate Nondiscriminatory Reason for Termination

The employer's burden to provide a legitimate, nondiscriminatory reason for terminating an employee "is one of production, not persuasion." *Id.* (citing *Sjostrand v. Ohio State Univ.*, 750 F.3d 596, 599 (6th Cir. 2014)). Industrial Fabricators has met its burden. Industrial Fabricators'

11

policy, of which Burgess was aware, provides that each "employee will be allowed up to 79 [attendance] points. Any employee who accumulates 80 points or more within any 12 consecutive month period will be discharged." (Burgess Dep. 97:16–18, Ex A.) The company explains that it terminated Burgess because he accrued 97 attendance points during his 10 months of employment, resulting in an automatic termination under the policy. (Wells Aff. ¶ 51; Landig Aff. ¶¶ 35–36.) Terminating an employee for violating the employer's attendance policy qualifies as a legitimate, nondiscriminatory reason for termination. *See Day v. Nat'l Elec. Contractors Ass'n*, 91 F. Supp. 3d 1008, 1020 (S.D. Ohio 2015). Thus, the burden shifts back to Burgess to create a genuine dispute of fact on whether the company's stated reason is a pretext for disability discrimination.

### 3. Pretext

A plaintiff can show pretext by pointing to evidence that: (1) the employer's stated reasons "have no basis in fact"; (2) the reasons "did not actually motivate the employer's action"; or (3) the reasons were "insufficient to motivate the employer's action." *Babb*, 942 F.3d at 320. An employee may also challenge the reasonableness of the employer's decision "to the extent that such an inquiry sheds light on whether" the employer's stated reason for termination was its actual motivation. *Id*. At the summary judgment stage, the plaintiff need only "prove enough to create a *genuine issue* as to whether" the employer's rationale is pretextual. *Babb*, 942 F.3d at 320 (emphasis in original). Industrial Fabricators argues that it is entitled to summary judgment because there is no genuine issue as to whether its stated rationale for terminating Burgess is pretextual. (Def.'s Mot. at 15.) The Court agrees.

Burgess argues that his employer's stated reason for terminating him—accruing over 80 attendance points—did not actually motivate his termination. Burgess claims that the sole motivation for his termination was his supervisor's "mistaken belief that [Burgess's] doctor's notes

12

were fake" and that it is "abundantly clear that Mr. Wells believed the doctor's notes related to Mr. Burgess's visits to Ohio Gastro were fake and issued him attendance points that resulted in his termination." (Pl.'s Resp. at 12, 17; Wells Dep. 21:3–6, Ex. F; Brogan Aff. ¶ 3, Ex. A.) And thus, because he would not have submitted the legitimate doctor's notes but for his alleged disability, his termination was unlawful.

To survive summary judgment on grounds that an employer's stated reason did not actually motivate the termination, the employee must "provide evidence 'which tend[s] to prove that an illegal motivation was *more* likely than that [reason] offered by the defendant." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 82 (6th Cir. 2020) (citing *Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 9 (6th Cir. 2007)) (emphasis in original). At first glance, Burgess's theory appears to be self-defeating. He does not dispute that his supervisor genuinely believed that the signatures on his doctor's notes were not legitimate. Burgess therefore advances the theory that he was terminated because his employer genuinely believed he submitted fake doctor's notes, not because he had a disability. But even if Burgess's theory is viable, Burgess does not present enough evidence to create a genuine dispute regarding Industrial Fabricators' legitimate, nondiscriminatory reason for termination.

Courts regularly find that terminating an employee for violating the employer's absenteeism policy "does not run afoul of the ADA." *Day*, 91 F. Supp. 3d 1008, 1019 (S.D. Ohio 2015) (finding that the employee's claim failed at the prima facie stage because he was not qualified for the job due to "continued violations of the absenteeism policy" and that, even if the employee made a prima facie case, the employee had no evidence that his termination for excessive absenteeism was pretextual); *see Perry v. Am. Red Cross Blood Servs.*, 651 F. App'x 317, 326 (6th Cir. 2016) (finding that, although attendance policy was "undoubtedly a harsh policy," the

13

employee's claim failed at the pretext stage because it was undisputed that the employee "accrued seven unscheduled absences in a twelve-month period, and this qualified her for termination" under the policy); *Vorachek v. Sec. Fed. Credit Union*, No. 07-15090, 2009 WL 4506440, at *5 (E.D. Mich. Dec. 1, 2009) (finding that employee could not demonstrate that employer's stated reason for terminating her, poor attendance, was pretextual because the employee presented no evidence that the attendance policy was applied in a discriminatory fashion).

It is undisputed that Burgess accrued over 80 attendance points regardless of whether his doctor's notes were real or fake. (Landig Dep. 17:13–18:2.) And the policy makes clear that any "employee who accumulates 80 points or more within any 12 consecutive month period will be discharged." (Burgess Dep., Ex A.) Industrial Fabricators enforced its attendance policy throughout Burgess's employment, issuing him a warning and a day off without pay when he accrued 70 attendance points by February of 2019, putting him just 10 points away from termination in his first six months of employment. (Landig Aff. ¶ 19; Edwards Aff. ¶ 8.) He does not dispute that he was chronically late or absent throughout his employment for reasons unrelated to his alleged disability.

Burgess accrued two points for missing three hours of work on June 7, 2019 and accrued five more points for missing a full day of work on June 11 for the colonoscopy. (Burgess Dep. 182:1–6; Wells Dep. 38:17–20; Landig Dep. 17:13–18:2.) Under the policy, Burgess would have been issued these points even if his supervisor believed the doctor's notes were legitimate because the policy issues points for *excused* doctor's absences based on the number of work hours missed. (*See* Burgess Dep., Ex A.) It is undisputed that Industrial Fabricators attributed the June 7, June 11, and June 12 absences as excused absences instead of 15-point unexcused absences despite Wells believing the doctor's notes were fake. (Landig Aff., Ex E; Wells Dep., Ex F.) While there

14

is a dispute regarding whether Burgess was issued five points or zero points for his June 12 absence (*compare* Wells Aff. ¶ 22 *with* Wells Dep. 40:13–17), Burgess still would have eclipsed 80 points under the policy because of the 15-point absence on June 13—even if Burgess had accrued zero points for June 7, June 11, and June 12 absences. (Landig Aff., Ex. E; Wells Dep., Ex F.) It is undisputed that Burgess did not call in or pre-arrange his June 13 absence as required under the policy. (Burgess Dep. 137:21–139:17, Ex A.) Thus, Burgess's argument that "he would never have been terminated" if he "never provided the doctor's notes that related to his disability" does not withstand the undisputed evidence. (Pl.'s Resp. at 17.) And Burgess has not challenged the attendance policy itself or presented evidence that the policy was "administered in a discriminatory fashion with respect to [him] and other non-disabled employees." *See Vorachek*, 2009 WL 4506440, at *5.

In sum, because Burgess accrued over the maximum allowed attendance points regardless of whether his doctor's notes were real or fake, Burgess's supervisor's belief that his doctor's notes were fake is not alone sufficient evidence for a reasonable jury conclude that "an illegal motivation was *more* likely" the reason for Burgess's termination than Industrial Fabricators' legitimate, nondiscriminatory reason. *Brown*, 814 F. App'x at 82. Burgess is understandably aggrieved that he was accused of submitting fake doctor's notes. But Burgess's evidence is insufficient to create a genuine issue on whether Industrial Fabricators' stated reason for terminating him is a pretext for disability discrimination. Industrial Fabricators is therefore entitled to summary judgment on all claims.[1]

---

[1] The Court's opinion should not be construed as condoning Industrial Fabricators' attendance policy. It is "undoubtedly a harsh policy[.]" *Perry*, 651 F. App'x at 326. The Court also does not hold that evidence of an employer's incorrect determination that an employee submitted fake doctor's notes cannot be used as evidence of pretext. Such evidence is but one piece of circumstantial evidence to be measured against the employer's evidence of a legitimate, nondiscriminatory reason for termination. Burgess makes a sound public policy argument that employers should not escape liability under the ADA by firing an employee based on a belief that the employee's doctor's notes are fake when the employer takes few steps to verify the legitimacy of the notes. (Pl.'s Resp. at 17.) However, the

## IV.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment on all claims. (ECF No. 12.) The Clerk is directed to close this case.

**IT IS SO ORDERED**.

**3/25/2021**                                                                **s/Edmund A. Sargus, Jr.**
**DATE**                                                                             **EDMUND A. SARGUS, JR.**
                                                                                       **UNITED STATES DISTRICT JUDGE**

---

must apply the law to the facts of this case. In this case, it is undisputed that Burgess was excessively absent and late, that Industrial Fabricators warned and disciplined him when he was 10 points from termination, and that Burgess ultimately exceeded over 80 points under the policy within a 12-month period, "qualif[ying] [him] for termination[,]" *Perry*, 651 F. App'x at 326, irrespective of the legitimacy of his June 7, June 11, and June 12 doctor's notes. Thus, by itself, the evidence that Burgess's supervisor believed his doctor's notes were fake is insufficient to create a genuine issue of fact at the pretext stage.